UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,  )   )           Plaintiff,           )   vs.                                                 )   )   ANTHONY GARCIA,                    )   )          Defendant.                       ) | No. 11-CR-01865 JH |

UNITED STATES' MOTION FOR UPWARD
SENTENCING DEPARTURE AND/OR VARIANCE

THE UNITED STATES OF AMERICA moves this Court, pursuant to USSG §§ 4A1.3, 5K2.8 and 18 U.S.C. § 3553(a), to depart and/or vary upward from Defendant Garcia's advisory sentencing guideline range.

   A.   *This Court should depart upward under USSG § 4A1.3*

The Court should adjust Defendant Garcia's sentence upward under the advisory guidelines because his current criminal history category of I "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes[.]" USSG § 4A1.3(a)(1). The guidelines sanction an upward departure in a defendant's criminal history category where reliable information exists to justify it. *Id.* As described in the presentence report, such information exists in this case. An upward departure in Defendant Garcia's criminal history category would also better reflect the true "nature and circumstances of the offense and the history and characteristics of the defendant," as well as help assure that this Court is able to fulfill its duty "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

Defendant Garcia's low criminal history score puts him in the same category as first time

offenders who have never had a single encounter with law enforcement authorities other than their offense of conviction.  Such categorization does not fairly reflect the far more disturbing portrait of Defendant Garcia that is painted in the presentence report in terms of his criminal past.

For example, paragraph 63 of the PSR describes how, on June 7, 2004, the defendant received a citation for indecent exposure.  According to the PSR, a Walmart employee reported that the defendant had been walking around a Walmart store in Albuquerque with his penis hanging out of his pants.  The defendant was in the store for about 30 minutes.  The defendant would cover his penis up and then he would pull up his long shirt to expose it.  The Walmart employee provided the police with a video tape that recorded the incident.  When the defendant left the store, the employee took note of his license plate, which allowed the police to track the defendant to his home and interview him.  The PSR indicates that when the police interviewed the defendant at his home, he acknowledged that he had been at the Walmart store and that he was sorry for pulling out his private parts and touching himself as he walked around the store.

Although the defendant received a misdemeanor conviction for the Walmart incident, for which he was placed on 364 days of probation, the defendant received only one point as part of his criminal history score, which is not sufficient to remove the defendant from criminal history category I.  "Neither the guidelines nor the commentary prohibit considering convictions also used to award criminal history points [as grounds for a criminal history departure.]" *United States v. Yahnke*, 395 F.3d 823, 825 (8th Cir. 2005).  As one of a continuing series of disturbing incidents in the defendant's criminal past, the Walmart incident illustrates how the criminal justice system thus far has simply failed adequately to calibrate the true dangerousness that

Defendant Garcia presents to the public – which is a measure that a defendant's criminal history score is intended to capture. Yet this Court is permitted to take into account prior lenient treatment that has been accorded to a defendant in assessing whether to depart upward in a defendant's criminal history category. *United States v. Flinn*, 987 F.2d 1497, 1500-01 (10th Cir. 1993)(citing leniency in prior sentencing as grounds for upward departure but remanding for explanation of methodology hitched to the guidelines used to explain degree of departure).

Paragraph 68 of the presentence report also reflects how the defendant is still facing charges in the Second Judicial District Court in Albuquerque that include charges for Criminal Sexual Contact of a Minor in the Third Degree (Child Under Age 13). Because the case is still pending, the defendant has not received any criminal points for this conduct. However, as a basis for departing upward in a defendant's criminal history category, the guidelines make clear that a sentencing court is specifically authorized to take into account whether "the defendant was pending trial or sentencing on another charge" at the time of the offense of conviction. USSG § 4A1.3(a)(2)(D). Such is the case here, as the charges against the defendant described in paragraph 68 of the PSR were brought against the defendant on November 12, 2010, and were pending at the time of the defendant's January 25, 2011, crime in the instant case.

Of course, under the guidelines, this Court is also specifically authorized to base an upward departure in a defendant's criminal history category upon "[p]rior adult criminal conduct not resulting in a criminal conviction." USSG § 4A1.3(a)(3).

Thus, paragraph 67 of the presentence report describes how, on September 30, 2010, an Albuquerque Police Department officer was dispatched in response to yet another indecent exposure call involving the defendant. In that case, a female jogger reported that while running

through the Bosque she saw the defendant about 20 yards away from her.  After the jogger made eye contact with him, the defendant reportedly undid the front of his pants and exposed his genital area to her.  The female reported that she then yelled, which caused Defendant Garcia to run away.  The female then called to three individuals working nearby, who ran after the defendant and held him until the officer arrived on the scene.  When the officer arrived, he interviewed Defendant Garcia, who claimed that while he was walking he needed to relieve himself and he did so because it did not appear that anyone was around.  The presentence report reflects that the defendant received no criminal history points for this incident.

      Paragraphs 28 through 31 of the presentence report also describe how at least four other women reported incidents to the police about how the defendant had also offered them yogurt samples on different dates and times at the Sunflower Market grocery store.  The inherent credibility of each of these reports is enhanced by the fact that they are remarkably similar to the report that the victim made in the instant case.

    The first additional woman to whom the defendant offered a yogurt sample that is mentioned in the PSR described how, sometime in mid-December 2010, she tasted a yogurt sample that the defendant gave her at the grocery store and said it tasted funny, so she did not finish it.  PSR at ¶ 28.  The second such woman described in the PSR explained how, on January 22, 2011, the defendant approached her with a single yogurt sample and told her "she had to try what was on the spoon first because that's where the nutrients are." PSR at ¶ 29.  However, because this woman noticed that the substance on the spoon was clear or white and the yogurt was pink, she declined to taste the sample.  *Id.*  The third additional woman mentioned in the PSR again described how the defendant approached her on January 3, 2011, with only one

yogurt sample. She tasted the yogurt and described it as being "gross." *Id.* at ¶ 30. The fourth additional woman also described how Defendant Garcia had also approached her with only one yogurt sample sometime between November 2010 and January 2011. She too tasted the yogurt, said it did not taste good and wanted to spit it out, but she could not find a trash can to do so. *Id.* at ¶ 31.[1]

The Tenth Circuit Court of Appeals has repeatedly recognized the legitimacy of upward departures in a defendant's criminal history category. *See, e.g., United States v. Waseta*, 647 F.3d 980, 989 (10th Cir. 2011) (sentencing court could have reasonably concluded that an upward departure in the defendant's criminal history category was merited based on the fact that the defendant pled to only a single count of sexually abusing his step grandson when the defendant's reported abuse was actually part of an eleven-year pattern of sexual abuse of the victim for which the defendant was not charged); *United States v. Scott*, 529 F.3d 1290 (10th Cir. 2008) (in case where defendant pled guilty to one count of transporting a minor across state lines in violation of the Mann Act, district court could have imposed an upward departure based on fact that the defendant had previously employed several women as prostitutes, including one juvenile, for which he was never convicted); *United States v. Shumway*, 112 F.3d 1413, 1427 (10th Cir. 1997) (upholding upward departure based on numerous uncharged incidents of artifact looting); *United States v. Flinn*, 987 F.2d 1497, 1500-01 (10th Cir. 1993) (district court

---

[1] Paragraph 66 of the PSR also describes how, on April 6, 2001, an APD officer received a call in which the defendant apparently was reported to have been seen masturbating in a car in an Albuquerque neighborhood. Based on the suspect's license plate, the responding officer learned that approximately a month earlier there had been a call about a similar claim of masturbation taking place outside a middle school. Yet the presentence report indicates that the defendant again received no criminal history points for either of these two disturbing incidents.

appropriately relied on five prior uncharged instances of harassment by telephone similar to the offense of conviction to depart upward); *United States v. Russell*, 905 F.3d 1450, 1455 (10th Cir. 1990) (affirming district court's reliance on a defendant's issuance of worthless checks not charged because the defendant made restitution).

Criminal history category I places the defendant within the criminal history category of offenders who present the least likely danger to the community and the least likely risk of re-offending. The nature and circumstances of the defendant's current offense, however, cast the defendant's past conduct, including his pending child molestation charges, the two separate incidents of exposing himself at the Walmart and to the female jogger at the Bosque, and the four prior instances of yogurt sampling, into an even more sinister light. Here, the whole of the defendant's criminal history appears to far exceed the sum of the defendant's accumulated criminal history points. The defendant's criminal past without question takes him outside the heartland of those offenders who fall into criminal history category I – offenders who, unlike the defendant, present both a minimal risk of re-offending and a minimal danger to the community at large.

Indeed, if the defendant had been convicted only of the four prior instances of tampering with yogurt samples described above, his criminal history score would be significantly higher than criminal history category I. For example, if the defendant theoretically had received sentences exceeding one year of imprisonment for each of those incidents,[2] he would have

---

[2]One suspects that the four additional women who have come forward since this case was made public are not the only people the defendant targeted with adulterated yogurt samples. One can imagine that others have declined to come forward out of fear that it would be humiliating or embarrassing to do so.

6

received three criminal history points for each separate incident, *see* USSG § 4A1.1(a), for a total criminal history score of 13, which would have placed him in criminal history category VI.[3]

Under the advisory guidelines, this Court has the responsibility of seeking fairly to assess the real risks of danger that a defendant actually poses to the community, and to suitably adjust a defendant's criminal history category if the Court determines that a defendant's criminal history category does not adequately fit the true characteristics of the defendant who is being sentenced. Under 18 U.S.C. § 3553(a)(1) and (2)(C), this Court also has a duty to fashion an individualized sentence for a defendant that, among other things, takes into account the "history and characteristics of the defendant" and which is designed to "protect the public from further crimes of the defendant." In this case, an upward departure in the defendant's criminal history category is appropriate, and is more than amply justified by the facts and circumstances of the defendant's past.

      B.     *This Court should also depart upward under USSG § 5K2.8*

The guidelines provide that a sentencing court may depart upward to reflect the true nature of a defendant's conduct if "the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim[.] ... Examples of extreme conduct include ... gratuitous infliction of humiliation." USSG § 5K2.8. As noted in the presentence report, a departure on these grounds is merited in this case.

---

[3]The Tenth Circuit has made clear that, if the Court does choose to depart in a defendant's criminal history category, the Court should explain how it arrived at the degree of departure. *See, e.g., Shumway*, 112 F.3d at 1427-28 (finding that district court's methodology for ascertaining degree of departure by assigning additional criminal history points to the defendant's criminal history score by analogy to a defendant with an additional felony conviction to be reasonable).

The universal reaction to the defendant's conduct is invariably one of extreme revulsion. Defendant Garcia used his position as an employee at a grocery store to target an innocent female victim, who was shopping at the store at the time with her four-year-old daughter. By offering her a sample of yogurt, the defendant tricked his victim into placing his semen into her mouth. Clearly, Defendant Garcia wanted to be in a position to witness the victim consume his bodily fluid. As reflected in the presentence report, the effect of the experience upon Defendant Garcia's victim was incredibly degrading. The victim states that she was "horrified by what happened, and scared by the thought that it could have been my four year old who ate the sample instead of me." PSR at ¶ 33. As noted in the presentence report, in the immediate wake of the incident, the victim also had to go to the hospital and undergo testing to determine whether she had been exposed to any communicable diseases. *Id.* She has also had to have follow-up testing done. *Id.*

In the presentence report, the defendant also states that, immediately after the incident, she "was nauseated and vomited and [her] stomach hurt." *Id.* Indeed, she was "so stressed about what happened that [she] became sick and lost [her] voice for a week." *Id.*

Her name and address were also disclosed as part of the police report, so that reporters kept calling her trying to talk to her, "[d]erogatory comments about [her] were posted on the internet ... [and p]eople began looking for [her] Facebook page, which [she] had to take down." *Id.* The defendant's actions also caused other stress in her life. *Id.* Based on the defendant's past, she worried that the defendant might even learn where she lived. *Id.*

According to the victim, the "incident left me feeling disgusted and humiliated." *Id.* And when she thinks about it, her "stomach hurts and [she] feels shaky." *Id.*

8

This case falls well within the spectrum of other cases where upward sentencing departures have been upheld under USSG § 5K2.8. *See, e.g., United States v. Rose*, 315 F.3d 956 (8th Cir. 2003) (defendant threatened a woman and posted pictures of her children on pornographic web sites and published their names, addresses and phone numbers)*; United States v. Bohanon*, 290 F.3d 869 (7th Cir. 2002) (allowing upward departure where defendant sent between 100 and 300 threatening letters to a couple, their neighbors, and the husband's employer, with "extremely vile" language)*; United States v. Davis,* 170 F.3d 617 (6th Cir. 1999) (upholding departure under § 5K2.8 for telemarketer who called victims "senile" and stupid" but ruling that "nice" telemarketer simply committed fraud, which did not justify departure).

There can be no doubt but that the defendant's actions were extremely degrading and humiliating to his victim. The most just result for the fact that the defendant violated his victim in such a repugnant manner would therefore be for the defendant's final sentence to fully reflect the repulsive and appalling nature of his conduct.

C.    *USSG § 5K2.14*

The Probation Office also suggests that an upward departure could be justified under USSG § 5K2.14. That guideline states that "[i]f national security, public health, or safety was significantly endangered, the court may depart upward to reflect the nature and circumstances of the offense." USSG § 5K2.14.

The United States is aware that there is a veritable cocktail of infectious diseases that could potentially appear in human ejaculate, to include HIV, herpes, gonorrhea, chlamydia, trichomoniasis, human papillomavirus and hepatitis B and C. An individual may also be asymptomatic for some of these diseases for years. And it seems safe to assume that the

defendant never gave a moment's thought to either his victim's physical welfare or to her mental or emotional well-being when he engaged in such a vile assault upon her.

Nonetheless, the problem presented with relying upon this guideline to depart upward in the defendant's sentence is the dearth of scientific literature on the topic of the risks of the transmittal of diseases that can arise from ingesting another person's semen without sex taking place. The best information that the USAO has been able to ascertain is that while such transmission may be possible, the chances of it actually happening are probably quite low.[4]

That said, the Probation Office notes that the "defendant's conduct caused a potential risk of significant health concerns." PSR at ¶ 27. The United States concurs with that statement. There can be no doubt that the victim in this case had every reason to be concerned, and to be tested for the transmission of diseases at the hospital. Undoubtedly, medical professionals would have counseled the victim to take exactly such precautionary measures, and to continue to be tested for the potential transmission of a battery of diseases for some period after the incident. One can also assuredly postulate that one reason there is a lack of scientific literature on the

---

[4]For example, a website hosted by the Department of Health and Human Services Centers for Disease Control and Prevention contains the following question and answer about the possibility of HIV being transmitted to a person from bodily fluids placed in restaurant food:

> Has HIV been transmitted from bodily fluids placed in restaurant food?
>
> No incident of food being contaminated with HIV-infected blood or semen has been reported to CDC. Furthermore, CDC has received no reports of HIV infection resulting from eating food, including condiments.
>
> HIV does not live long outside the body. Even if small amounts of HIV-infected blood or semen was consumed, exposure to the air, heat from cooking, and stomach acid would destroy the virus. Therefore, there is no risk of contracting HIV from eating food.

Http://www.cdc.gov/hiv/resources/qa/transmission.htm.

topic of the transmission of diseases, including HIV, through adulterated food, is because so few people are reported to have ever engaged in the type of deviant conduct in which the defendant engaged.

In any event, at this time, the United States is not in a position affirmatively to either "rule out" or "rule in" the possibility, within the meaning of USSG § 5K2.14, that the defendant may have actually risked transmitting any sort of disease and thereby endangered his victim's physical health by his actions. Nonetheless, even if this Court concludes that causing a victim to have to suffer and worry about having potentially been exposed to some horrible disease does not meet the requirements of section 5K2.14, as discussed below, that fact would still undoubtedly qualify as grounds for enhancing the defendant's sentence under 18 U.S.C. § 3553(a).

    D.    *18 U.S.C. § 3553(a)*

As this Court is well aware, regardless of whether the Court chooses to depart upward from the guidelines, the Court can still vary upward based on the sentencing factors set forth in 18 U.S.C. § 3553(a). Indeed, many of the reasons that exist for departing upward provide a compelling justification for an upward variance. The fact is that the defendant's perverted conduct was extreme and a guideline sentence simply does not adequately address the sentencing factors under section 3553(a).

As discussed above, both the "nature and circumstances of the offense" and the "history and characteristics of the defendant," 18 U.S.C. § 3553(a), strongly weigh in favor of an upward variance. In addition, the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, ... to provide just punishment for the offense[,] ... to

afford adequate deterrence to criminal conduct[, and] ... "to protect the public from further crimes of the defendant," *id.*, all weigh in favor of a sentence that exceeds the sentence called for under the guidelines in this case.

  E. <u>*Conclusion*</u>

  For the reasons cited above, this Court should depart and/or vary upward from the advisory guidelines in this case.[5]

          Respectfully submitted,

          KENNETH GONZALES
          United States Attorney

          *Filed electronically 1/25/2012*

          FRED J. FEDERICI
          Assistant United States Attorney
          P.O. Box 607
          Albuquerque, New Mexico 87103
          (505) 346-7274

<u>CERTIFICATE OF SERVICE</u>

  This document was filed on January 25, 2012, using the Court's electronic filing system, which will automatically serve a copy of this document upon AFPD John Butcher on behalf of Defendant Anthony Garcia.

*Filed electronically 1/25/2012*

FRED J. FEDERICI
Assistant United States Attorney

---

[5]The United States has not sought the defendant's position on this motion as it is presumed that Defendant Garcia would not agree to the Court imposing an enhanced sentence.